(18 P.3d 299)
No. 85,305

SARAH R. WURTZ, *Appellee,*
v. CEDAR RIDGE APARTMENTS, *Appellant.*

Opinion filed February 16, 2001.

*Steven R. Wiechman,* of Topeka, for appellant.

*Tracie R. England,* legal intern, *John J. Francis,* supervising attorney, of Washburn Law Clinic, of Topeka, and *Bruce Plenk,* of Lawrence, for appellee.

Before MARQUARDT, P.J., GREEN, J., and ROGG, S.J.

GREEN, J.: Cedar Ridge Apartments (Cedar Ridge) appeals the judgment of the trial court which awarded Sarah R. Wurtz a security deposit, rent credit, and penalty. On appeal, Cedar Ridge argues (1) that statutory and case law do not prohibit the forfeiture of a security deposit as liquidated damages and (2) that the trial court erred in failing to award it a cancellation fee as provided for in the lease. Alternatively, Cedar Ridge argues that if the trial court did not err in awarding Wurtz a security deposit, the trial court erred in assessing the penalty. We affirm in part and modify in part.

Cedar Ridge and Wurtz entered into a lease agreement for 1 year to run from March 1, 1999, to February 29, 2000. The monthly rent was $395. Wurtz paid a $200 security deposit to Cedar Ridge pursuant to the lease agreement. The provision referring to the

security deposit provides that the deposit may be retained to reimburse Cedar Ridge for damages as a result of a breach of the covenants or for rents and damages resulting from Wurtz' early termination of the lease agreement. The lease agreement also contained a cancellation provision which required Wurtz, upon early termination of the lease, to give 30 days' written notice, forfeit the security deposit, and pay a cancellation fee in the amount of $474.

Wurtz sent a letter dated October 1, 1999, to Cedar Ridge requesting cancellation of the lease due to unacceptable living conditions, return of the security deposit, and waiver of the cancellation fee. Cedar Ridge responded by a letter dated October 4, 1999, which stated that if Wurtz wished to terminate the lease early she would have to give 30 days' notice, forfeit the security deposit, and pay the cancellation fee of $474. On October 29, 1999, Wurtz completed a notice to move form upon which she noted that she was moving because she had bought a house. Wurtz then vacated the apartment and paid prorated rent for the month of November in the amount of $356.

A move-out inspection was conducted on November 9, 1999. On the inspection sheet, Cedar Ridge claimed that Wurtz forfeited the $200 security deposit, owed the $474 cancellation fee, and owed $104 for cleaning and miscellaneous expenses, resulting in a total due from Wurtz of $578. The apartment was re-let on November 20, 1999, to another tenant. The re-letting of the apartment before the end of November resulted in a rent overpayment by Wurtz of $106. Cedar Ridge indicated that the overpayment amount would be credited to the $578 it claimed Wurtz owed, alleging the revised total due to be $472.

Wurtz then sent a letter to Cedar Ridge dated January 11, 2000, indicating that in light of the rent overpayment she would not pay any of the money claimed by Cedar Ridge. Cedar Ridge responded in a letter requesting that she pay the balance of $472 within 2 weeks to maintain a good credit reference.

Wurtz then filed a small claims court petition seeking the return of the security deposit, damages, and a finding that the cancellation fee provision was null and void as a grossly unfair amount. Cedar

Ridge filed a counterclaim in small claims court seeking $472. The small claims court denied both parties' claims.

Wurtz appealed to the district court but Cedar Ridge did not file a cross-appeal. The district court found that liquidated damages are prohibited by statute and awarded Wurtz the security deposit ($200) less damages ($104) plus a rent credit ($106) and assessed a penalty in the amount of $303 under K.S.A. 1999 Supp. 58-2550(b) for a total of $505. The district court refused to consider whether the small claims court correctly denied Cedar Ridge's counterclaim for the cancellation fee because Cedar Ridge failed to preserve the issue for appeal.

Cedar Ridge's first argument on appeal is that the trial court erred in awarding Wurtz the security deposit. Specifically, Cedar Ridge contends that statutory and case law do not prohibit the forfeiture of a security deposit as liquidated damages. Interpretation of a statute is a question of law subject to unlimited review. *State v. Patterson*, 25 Kan. App. 2d 245, 247, 963 P.2d 436, *rev. denied* 265 Kan. 888 (1998). Likewise, a de novo standard of review applies to the interpretation of case law. *NEA-Coffeyville v. U.S.D. No. 445*, 268 Kan. 384, 386, 996 P.2d 821 (2000).

The Kansas Residential Landlord and Tenant Act (RLTA), K.S.A. 58-2540 *et seq.*, addresses the forfeiture of security deposits. A security deposit is defined in the RLTA as

"any sum of money specified in a rental agreement, however denominated, to be deposited with a landlord by a tenant as a condition precedent to the occupancy of a dwelling unit, which sum of money, or any part thereof, may be forfeited under the terms of the rental agreement upon the occurrence or breach of the conditions specified therein." K.S.A. 58-2543(m).

The RLTA also specifies when a security deposit may be forfeited. K.S.A. 1999 Supp. 58-2550(b) provides:

"Upon termination of the tenancy, any security deposit held by the landlord may be applied to the payment of accrued rent and the amount of damages which the landlord has suffered by reason of the tenant's noncompliance with K.S.A. 58-2555, and amendments thereto, and the rental agreement, all as itemized by the landlord in a written notice delivered to the tenant."

Under K.S.A. 58-2555(f) the tenant is responsible for actual damages including "any destruction, defacement, damage, impairment or removal of any part of the premises."

The issue of whether a security deposit provision in a lease constitutes liquidated damages was addressed in *Vogel v. Haynes*, 11 Kan. App. 2d 454, 456, 730 P.2d 1096, *rev. denied* 240 Kan. 806 (1986). *Vogel* involved a lease which termed the security deposit as a "deposit . . . as security to the Lessor for the performance of this Agreement." The *Vogel* court found that this language did not constitute a liquidated damages provision. *Vogel* further held that "a lump sum penalty, common to liquidated damages, is proscribed by K.S.A. 58-2550(b) which provides only for actual damages sustained." 11 Kan. App. 2d at 456.

Here, the lease between Cedar Ridge and Wurtz provides for a $200 deposit "as security for the payment of all charges which may accrue and for the full and faithful performance of all the covenants and conditions of this Lease Agreement." This provision is similar to that addressed in *Vogel*. As in *Vogel*, the $200 security deposit is designed to cover actual damages and is not a liqudated damages clause. Although Wurtz' lease provides for a forfeiture of the entire security deposit upon early termination of the lease, such a penalty is prohibited by 58-2550(b) because, as noted in *Vogel*, the statute only provides for actual damages sustained. Furthermore, 58-2550(b) requires that these actual damages must be itemized. In contrast, a forfeiture or a liquidated damages clause, by its nature, is not itemized. As a result, we find that the district court correctly refused to award Cedar Ridge the entire security deposit as liquidated damages, but correctly deducted $104 in damages from the deposit.

It is next necessary to determine whether the district court erred in calculating the penalty Cedar Ridge was to pay Wurtz for failing to return the security deposit to her. The district court calculated the penalty at $303 by first determining that Cedar Ridge owed Wurtz $202 ($200 security deposit, less $104 damages, plus $106 rent credit) and assessing the penalty against that amount (1½ x $202) for a total judgment against Cedar Ridge in the amount of $505.

Cedar Ridge contends that the penalty should have been assessed against the amount of the security deposit wrongfully withheld, which we have calculated at $96. Wurtz, on the other hand,

concedes that the district court erred in calculating the penalty, suggesting that the penalty should have been assessed against the $200 security deposit.

K.S.A. 1999 Supp. 58-2550(b) governs the procedure to be followed by a landlord in returning the security deposit to a tenant upon termination of the lease agreement. The pertinent part of the statute reads:

"If the landlord proposes to retain any portion of the security deposit for expenses, damages or other legally allowable charges under the provisions of the rental agreement, other than rent, the landlord shall return the balance of the security deposit to the tenant within 14 days after the determination of the amount of such expenses, damages or other charges, but in no event to exceed 30 days after termination of the tenancy, delivery of possession and demand by tenant."

Under this statute, Cedar Ridge was entitled to retain $104 from the security deposit for damages and expenses. Accordingly, Cedar Ridge wrongfully withheld $96 of the security deposit and may be penalized for doing so under K.S.A. 1999 Supp. 58-2550(c). The statute provides that "the tenant may recover that portion of the security deposit due together with damages in an amount equal to 1½ *the amount wrongfully withheld.*" (Emphasis added.) Because Cedar Ridge wrongfully withheld $96 of the security deposit, the district court should have assessed the penalty against that amount. As a result, the penalty assessed against Cedar Ridge is decreased to $144 (1½ × $96).

It is important to note that the trial court also erred in assessing a penalty against the $106 rent credit Cedar Ridge failed to pay Wurtz. K.S.A. 1999 Supp. 58-2550 does not provide for a penalty on a wrongfully withheld rent credit, only for wrongfully withheld security deposits.

Cedar Ridge also contends that the district court erred in refusing to award it a cancellation fee in the amount of $474. However, Cedar Ridge did not cross-appeal to the district court the issue of whether the small claims court erred in refusing to award it a cancellation fee. Cedar Ridge contended at oral argument that it was not required to file a cross-appeal in the district court because under K.S.A. 61-2709(a) all appeals from small claims judgments "shall be tried and determined *de novo* before a district judge."

Cedar Ridge interprets this statute as providing for a new trial on all issues considered by the small claims court, not merely a trial on the issues appealed by Wurtz. Interestingly, this is an issue of first impression.

Statutes purporting to grant the authority to hold trials de novo on appeal are to be strictly construed. *Nurge v. University of Kansas Med. Center*, 234 Kan. 309, 316, 674 P.2d 459 (1983).

This court interpreted 61-2709(a) as expressing legislative intent that a district court reviewing a small claims action sits as an appellate court. *Armstrong v. Lowell H. Listrom & Co.*, 11 Kan. App. 2d 448, 725 P.2d 540 (1986). The *Armstrong* court rationalized:

"We construe words and phrases according to the context in which they are used and give words in common use their natural and ordinary meaning. [Citation omitted.] In natural and ordinary usage, 'appeal' does not signify an original action, but a review of a lower court's decision by a higher court. The provision for appeal 'from any judgment' and the requirement that the notice of appeal specify 'the order, ruling, decision, or judgment complained of' supports our conclusion that the legislature used 'appeal' in K.S.A. 61-2709(a) in its natural and ordinary sense.

"In the absence of express legislative directive to the contrary, we interpret 'appeal' in K.S.A. 61-2709(a) to refer to a review of the judgment of the small claims court, not to a new, original action in the district court. The provision for de novo review does not alter the appellate nature of the district court's authority, but rather specifies the procedure to be employed on appeal of a small claims judgment, directing the district court to make an independent determination of the facts." 11 Kan. App. 2d at 451-52.

*Armstrong* determined that the district court acted beyond its jurisdiction as a small claims appellate court when it awarded plaintiff a judgment exceeding the small claim.

The scope of a district court's appellate jurisdiction has been consistently construed as limited. See, *e.g., McCracken v. Wright*, 159 Kan. 615, 618, 157 P.2d 814 (1945) ("It has been the settled law of this state for many years that a district court takes a case appealed from a justice of the peace with only the limited jurisdiction of the justice and does not acquire any original jurisdiction."); *Angle v. Kansas Dept. of Revenue*, 12 Kan. App. 2d 756, 765, 758 P.2d 226, *rev. denied* 243 Kan. 777 (1988) ("[T]he Supreme Court has not interpreted any statute to allow true de novo review in the

sense of a new trial on facts and issues as though they had never been tried. Even under the de novo review recognized in KCCR cases, the court is restricted to those issues preserved in a motion for rehearing . . . .").

We conclude that a district court hearing an appeal from a small claims action may only decide those issues properly preserved for appeal by an appellant or cross-appellant. Even though K.S.A. 61-2709(a) provides for de novo review, the proceeding is still predominantly appellate in nature. If an appellee were allowed to raise an issue in the district court without filing a cross-appeal, the proceeding would not be truly appellate. Because Cedar Ridge failed to cross-appeal the denial of its counterclaim, the district court was precluded from addressing the cancellation fee issue. Moreover, because the cancellation fee issue was not raised before the district court, the issue cannot be raised in this appeal. See *Lindsey v. Miami County National Bank*, 267 Kan. 685, 690, 984 P.2d 719 (1999). As a result, we find that Cedar Ridge failed to preserve for appeal the issue of cancellation fee provisions in the lease agreement.

In summary, we find that Wurtz is entitled to the security deposit ($200), less damages and expenses ($104), plus a rent credit ($106) and a penalty ($144) for a total of $346 plus interest. In addition, Wurtz is not required to pay the cancellation fee because that issue was not preserved for appeal.

Affirmed in part and modified in part.